Alfred **CROWELL, Appellant,**

v.

**UNITED STATES PAROLE COMMISSION, Appellee.**

No. 83–3285.

United States Court of Appeals, Third Circuit.

Argued Nov. 15, 1983.

Decided Jan. 16, 1984.

**1407**

Alan Ellis, David M. McGlaughlin (argued), Ellis, Fogelnest & Newman, Philadelphia, Pa., for appellant.

David Dart Queen, U.S. Atty., Albert R. Murray, Asst. U.S. Atty., Harrisburg, Pa., Henry J. Sadowski (argued), Regional Counsel, U.S. Parole Commission, Philadelphia, Pa., for appellee.

Before ADAMS, BECKER and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This case presents the question whether the application of revised parole regulations of the U.S. Parole Commission to appellant Alfred Crowell, a federal prisoner, violated his rights under the *ex post facto* clause of the United States Constitution. Between

**1.** Originally Crowell received two separate sentences, a fifteen-year sentence and a four-year sentence to run consecutively. Thus his total original sentence was nineteen years. However, the four-year consecutive sentence was subsequently made concurrent with the fifteen-year sentence.

the time Crowell committed his crime and the time he was considered for parole, the parole regulations were revised by the Commission to require a longer period of time served in prison prior to parole. Although the increase in the parole-range guidelines would appear detrimental, there was another change in the regulations that offset any detrimental impact to Crowell. Under the 1975 regulations (which were in effect when Crowell committed his offense), a prisoner with outstanding forfeited statutory good-time was not eligible for parole, and, at all times after Crowell was statutorily eligible for parole, he had outstanding forfeited statutory good-time. The 1979 regulations (which the Commission applied in considering Crowell for parole) changed this provision to authorize the Commission to grant parole even where a prisoner has outstanding forfeited statutory good-time. Thus, Crowell was eligible for parole under the 1979 regulations but not under the 1975 regulations. Because of this fact, we hold that Crowell has failed to demonstrate detrimental impact and, therefore, that the increase in the parole-range guidelines did not, in his case, violate the *ex post facto* clause.

I.

On October 1, 1976, Crowell was sentenced to serve a term of fifteen years in federal prison as the result of his convictions for various drug-related offenses occurring between July, 1974, and May, 1976.[1] On October 19, 1979, Crowell received his initial parole hearing. In considering his case, the Parole Commission applied the 1979 parole-range guidelines in effect on the date of the hearing rather than the 1975 guidelines that had been in effect on the date of Crowell's offense.[2] *See* 28 C.F.R. § 2.20 (1975 & 1979).

**2.** Crowell first filed a habeas corpus petition on May 15, 1981. On August 19, 1981, the District Court for the Middle District of Pennsylvania denied the petition, and Crowell appealed to this court. On January 19, 1983, a panel of this court affirmed the district court's order denying relief. On February 14, 1983, the court

Under the 1975 guidelines, given Crowell's "offense severity rating" and "salient factor score," a suggested parole-range of twenty-six to thirty-six months would have been specified. The 1979 guidelines specified a higher parole-range of forty to fifty-two months. Under any guidelines, however, Crowell was required by statute to serve at least one-third of his sentence (sixty months on a fifteen-year sentence). At his initial parole hearing, the Commission set Crowell's presumptive parole-release date at service of ninety-one months, considerably above both the 1975 and 1979 guideline ranges, and above the statutory minimum term of imprisonment. Crowell argues that the decision to delay his parole release for so long was, at least in part, a result of the application of the more severe 1979 guidelines, and that this retrospective application violates the *ex post facto* clause.

Appellant's argument that retrospective application of the 1979 guidelines to his case violated the *ex post facto* clause is based on our decision in *U.S. ex rel. Forman v. McCall,* 709 F.2d 852 (3d Cir.1983). In *Forman* we held that (1) the focal point of the *ex post facto* analysis is on the date of the offense and not the date of sentence; and (2) parole guidelines could constitute laws within the meaning of the *ex post facto* clause depending on whether the Parole Commission acts rigidly, or with substantial flexibility, in applying them. *Id.* We further stated that the mere fact that the Parole Commission went outside the ranges established by both new and old guidelines did not eliminate the *ex post facto* problem created by an increase in the guidelines. Instead, we concluded that if the Commission applied the guidelines mechanically so that Forman would have been paroled a set number of months below the minimum peri-

od of incarceration established by the applicable guideline range (whatever that guideline range happened to be), then Forman was retroactively disadvantaged in violation of the *ex post facto* clause. We remanded the case to the district court so that a record could be created on the factual issue of whether or not the parole guidelines had been applied mechanically.

There is no question that the parole regulations in existence in 1979 were retrospectively applied to Crowell and that the 1979 guidelines specified a longer period of service in prison prior to parole than the 1975 guidelines. If that was all there was to this case, we might well be constrained to remand to the district court in light of *Forman* for a factual determination whether the guidelines were applied mechanically in Crowell's case. The Commission contends, however, that Crowell cannot establish that he was disadvantaged by the retrospective application of the 1979 regulations.

In order to make out a violation of the *ex post facto* clause, two elements must be proven. The law "must be retrospective, that is, it must apply to events occurring before its enactment, and [the law] must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (footnotes omitted). *See U.S. ex rel. Forman v. McCall,* 709 F.2d 852, 857 (3rd Cir.1983), quoting *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925) ("The constitutional prohibition [the *ex post facto* clause] and the judicial interpretation of it rest upon the notion that laws, whatever their form, which purport to make innocent acts criminal after the event, or to aggravate an offense, are harsh and oppressive, and that the criminal quality attributable to

denied Crowell's petition for rehearing *en banc.* However, in footnotes to both the panel's judgment order and the order denying rehearing en banc, the court appeared to indicate its belief that the 1975 parole guidelines (rather than the 1979 parole guidelines) had been applied by the Parole Commission in determining Crowell's presumptive parole date. Subsequently, in response to an inquiry from Crowell's attorney, the Parole Commission stipulated that it had applied the 1979 parole guidelines in determining Crowell's presumptive parole date. Consequently, Crowell filed a second petition for a writ of habeas corpus with the District Court for the Middle District of Pennsylvania which the district court denied on June 8, 1983. Appellant here seeks reversal of that denial.

an act, either by the legal definition of the offense or by the nature or amount of the punishment imposed for its commission, should not be altered by legislative enactment, after the fact, *to the disadvantage of the accused*") (emphasis added).

■ It is axiomatic that "[w]e must compare the two statutory procedures *in toto* to determine if the new [law] may be fairly characterized as more onerous." *Dobbert v. Florida,* 432 U.S. 282, 294, 97 S.Ct. 2290, 2299, 53 L.Ed.2d 344 (1977). When Crowell committed his offenses, the parole regulations (of which the parole-range guidelines are part) absolutely prohibited parole of any prisoner who had any outstanding forfeited statutory good-time. Section 2.29(a) of the regulations provided:

> 2.29 Withheld and forfeited good time. (a) Section 4202 of title 18 of the United States Code permits Federal prisoners to be paroled if they have observed the rules of the institution in which they are confined and if they are otherwise eligible for parole. Any forfeiture of statutory good time shall be deemed to indicate that the prisoner has violated the rules of the institution to a serious degree, and a parole will not be granted in any such case in which such a forfeiture remains effective against the prisoner concerned....

28 C.F.R. § 2.29(a) (1975). The record establishes that Crowell became statutorily eligible for parole on May 20, 1981, and that at all times from that date until the present he has had outstanding forfeited statutory good-time. If, therefore, the Parole Commission had applied the 1975 parole regulations in determining Crowell's presumptive parole date, regulation 2.29(a) would have required that Crowell be denied parole.

In contrast, under the 1979 regulations, forfeiture of statutory good-time was only a factor to be considered by the Parole Commission in determining whether to parole a prisoner:

> 2.6 *Withheld and forfeited good time.*
>
> While neither a forfeiture of good time nor a withholding of good time shall bar a prisoner from receiving a parole hearing, Section 4206 of Title 18 of the United States Code permits the Commission to parole only those prisoners who have substantially observed the rules of the institution.

28 C.F.R. § 2.6 (1979). Plainly then, application of the 1979 regulations was more advantageous to Crowell than application of the 1975 regulations would have been, as evidenced by the fact that the Commission has set a presumptive parole-release date for Crowell. Therefore, Crowell cannot, as a matter of law, establish detrimental impact. Absent such detrimental impact, retroactive application of the 1979 parole regulations did not constitute a violation of the *ex post facto* clause. *Forman,* 709 F.2d 857–859.[3] For this reason, the judgment of the district court will be affirmed.

---

**3.** We need not reach, and we do not decide, the question whether the regulations dealing with forfeited statutory good-time, *see* 28 C.F.R. § 2.29(a) (1975) and 28 C.F.R. § 2.6 (1979), are themselves laws within the ex-post-facto clause. It is enough, for purposes of this appeal, for us to hold that, if the parole-release guidelines are laws, Crowell is not able to demonstrate that he has been disadvantaged by retrospective application of the 1979 guidelines. This judgment is without prejudice to whatever claims Crowell might raise in the event that his forfeited statutory good-time is reinstated.